UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

T<small>ONY</small> L<small>ARKIN</small>,

             Plaintiff,             Case No. 2:20-cv-111

v.                                         Honorable Robert J. Jonker

S<small>ARAH</small> S<small>CHROEDER</small> et al.,

             Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The

events about which he complains occurred at that facility.  Plaintiff sues the MDOC Director,[1] LMF Warden Sarah Schroeder, LMF Assistant Deputy Warden Sprader, and LMF Healthcare staff.

Plaintiff alleges that he is susceptible to heat-related illness.  He offers a special accommodations order that supports his claim.  Neither Plaintiff nor the special accommodations order, however, explain why Plaintiff is so susceptible.

Plaintiff reports that he submitted a healthcare kite on May 19, 2020.  He complained of exhaustion and lightheadedness because of the heat inside his cell.  He noted that he was not being allowed to use his fan to cool himself.  He claims that Defendant Sprader, as overseer of housing, either issued or approved the order preventing Plaintiff from using his fan.

During the early morning hours of May 20, Plaintiff told a corrections officer that he was feeling faint because of the heat in his cell.  A couple of hours later, at 5:28 a.m., he passed out in his cell.  He hit his head and back as he fell.  He was out for 3 minutes.

Plaintiff's cellmate immediately reported to another inmate.  Within 6 minutes of that report, a corrections officer arrived and stated that he would contact healthcare.  About half an hour later, Plaintiff was called out of his cell by a nurse.  Plaintiff informed the nurse that he was in pain, had fainted due to the heat, and that he felt delirious and disoriented.  The nurse never checked Plaintiff's vital signs; instead, the nurse simply talked to Plaintiff on the stairs.  The nurse informed Plaintiff that he "wasn't dying so he'd see [Plaintiff] later on . . . [the nurse] had other things to do, [Plaintiff should] file a healthcare kite."  (Compl., ECF No. 1, PageID.4.)

---

[1] Plaintiff names Patricia Caruso as the MDOC Director.  She is no longer the director.  The present MDOC Director is Heidi Washington.  *See* https://www.michigan.gov/corrections/0,4551,7-119-68886_68887---,00.html (visited July 28, 2020).  Director Washington has served as the director since July of 2015.  *Id*.  Plaintiff anticipated that he may have identified the wrong person; he identifies Patricia Caruso or "Present Successor" as the defendant.  The Court will direct the Clerk to substitute Heidi Washington as the proper defendant in place of Patricia Caruso and, going forward, will refer to the MDOC Director Defendant as Ms. Washington.

A nurse came to see Plaintiff about half-an-hour later. The nurse took Plaintiff's vital signs and examined the bruise on Plaintiff's back. The nurse told Plaintiff that healthcare personnel could not do anything about the heat and that Plaintiff should use his fan. Plaintiff asked corrections officers if he could use his fan. They told him it was not allowed.

About two hours after Plaintiff's encounter with the nurse, Plaintiff fell again. A corrections officer promptly came to Plaintiff's cell. The officer said he would call healthcare. He brought Plaintiff a healthcare kite. Healthcare personnel arrived a few moments later. The healthcare provider told Plaintiff to take Tylenol. Plaintiff was also told that he was suffering from the heat because of his weight and that healthcare could not do anything about Plaintiff not being allowed to use his fan.

Plaintiff claims he suffered medical neglect at the hands of the healthcare professionals. He specifically describes their conduct as medical malpractice which he contends is a violation of the Eighth Amendment. He claims that Defendant Sprader created unsafe conditions because he would not allow fans and did not put emergency call buttons in the cells. Plaintiff also claims that Defendants Schroeder and Washington lack "supervisory competence." (Compl., ECF No. 1, PageID.7.) Plaintiff alleges that "[t]he medical neglect, unsafe conditions, and lack of supervisory competence violated [his] Constitutional right[s under the] Eight[h] and Fourteenth Amendment[s] to the United States Constitution." (*Id.*)

Plaintiff also makes reference to the Americans with Disabilities Act. He states: "this claim/suit falls under the 'Americans with Disabilities Act.'" (*Id.*, PageID.4.)

Plaintiff seeks a declaration that Defendants have violated his constitutional rights and an award of compensatory and punitive damages against each Defendant.

**II.     Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct allreged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

4

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory liability

Plaintiff alleges that Defendants Washington and Schroeder are liable for the misconduct of the other Defendants because they supervise the other Defendants. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington or Schroeder engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Americans with Disabilities Act

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). The Supreme Court has held

5

that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Plaintiff, however, asks the Court to award compensatory and punitive damages against each defendant, jointly and severally, thus indicating that he has filed suit against them in their respective individual capacities. There can be no such claim. "Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity." *Everson*, 556 F.3d at 501 n.7.

Moreover, to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). All Plaintiff has done here is parrot the words "Americans with Disabilities Act." He has not even alleged that he has a disability or that Defendants have discriminated against him based upon that disability. Therefore, even if Plaintiff sued Defendants in their respective official capacities, he has not stated a claim against them.

    **C.**    **Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)

(per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

### 1. Medical neglect

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id*. at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id*. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem

7

the need for medical attention clear. *See, e.g., Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 466, 451 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted). The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id*. at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

Plaintiff describes two distinct medical problems: the heat sensitivity that leaves him lightheaded and disoriented; and the injuries he suffered following his falls. The medical accommodations detail suggests that Petitioner's heat sensitivity has been part of his life for years. One of the healthcare professionals indicated that it was caused by Plaintiff's weight. He does not dispute that characterization. Plaintiff describes his post-faint injuries as bruising, and possibly a headache. He offers no more information regarding the severity of the injuries.

Although lightheadedness and disorientation might be severe symptoms, when they are caused by heat sensitivity and can be treated with the use of a fan—a solution that both the healthcare professionals and Plaintiff suggested—it is difficult to infer a serious medical need from the facts Plaintiff has alleged. Similarly, Plaintiff does not suggest that his bruising or headache did not resolve on their own. Moreover, the healthcare professionals offered pain relief in the form of Tylenol. The Court concludes, therefore, that the facts alleged by Plaintiff do not demonstrate the serious medical need required to allege a claim for deliberate indifference under the Eighth Amendment.

Even if the Court considered Plaintiff's allegations regarding the objective component to be sufficient, his allegations regarding the subjective component fall short. The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

9

Plaintiff describes the conduct of the healthcare professionals who treated him as medical negligence. That does not suffice to demonstrate the subjective requirement. Moreover, the facts Plaintiff alleges do not support an inference that Defendants had the necessary state of mind. Plaintiff was seen by healthcare professionals three times in the four hours following his initial fall. They suggested treatment for Plaintiff's heat sensitivity—a fan—and for the pain associated with the injuries for his fall—Tylenol. Although Plaintiff describes that effort as negligent, he does not suggest any additional steps the healthcare professionals could have taken. Indeed, he apparently agrees that a fan would have addressed his heat sensitivity issue.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Even if the facts alleged by Plaintiff might be considered negligence, they fall short of gross incompetence. The fact that Defendant Sprader had disallowed fans was certainly not the fault of the healthcare professionals. Moreover, it is not apparent from Plaintiff's complaint that the inability to use a fan continued beyond the few-hour window chronicled in Plaintiff's complaint. There are simply no facts alleged by Plaintiff to support the inference that the healthcare professionals that treated him were aware of a substantial risk of serious harm to

11

Plaintiff and then disregarded that risk. Accordingly, Plaintiff has failed to state an Eighth Amendment claim against the healthcare professionals.

### 2. Sprader's indifference to Plaintiff's safety

In its prohibition of "cruel and unusual punishments," the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer nan*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To state such a claim, a plaintiff must allege facts that show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766-67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference means the same thing in this context as in the context of medical care: deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766.

#### a. Prohibition of fan use

Plaintiff's claim against Defendant Sprader regarding the alleged prohibition of fan use fails because Plaintiff has not alleged, nor do the facts Plaintiff has alleged support the inference, that Sprader was aware that Plaintiff faced a substantial risk of serious harm in the absence of fan use. Therefore, Plaintiff has failed to state an Eighth Amendment claim relating to the fan prohibition.

12

### b. Failure to install emergency call buttons in Plaintiff's cell

The failure to provide an emergency call button, standing alone, does not constitute deliberate indifference. *See Parsons v. Wilkinson*, No. 97-3011, 1998 WL 791810, at *2 (6th Cir. Nov. 4, 1998). Plaintiff has failed to allege that Defendant Sprader was aware of a substantial risk to Plaintiff's safety in the absence of an emergency call button and then disregarded that risk. Moreover, even absent an emergency call button, Plaintiff's cellmate was able to summon aid both times Plaintiff fell. Therefore, Plaintiff has failed to state an Eighth Amendment claim with regard to Defendant Sprader's failure to install an emergency call button in Plaintiff's cell.

### D. Fourteenth Amendment

Plaintiff's Fourteenth Amendment claim is as scant as his ADA claim. Plaintiff states only that the medical neglect, unsafe conditions, and supervisory incompetence violated his Fourteenth Amendment rights. Plaintiff's lack of specificity leaves the Court to guess at what he intended by his reference to this amendment.

Plaintiff does not allege that he was treated differently than any other inmate; so, it seems unlikely he is invoking the Equal Protection Clause. Plaintiff does not allege he was deprived of "life, liberty, or property;" so it seems unlikely he is claiming the protections of procedural due process. Presumably, Plaintiff is claiming that Defendants' actions—or inactions—violate Plaintiff's substantive due process rights.

"Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*,

640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his medical claims and his safety claims. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Thus, the standard applicable to the Eighth Amendment, and not the more generalized notion of substantive due process should be applied. Consequently, Plaintiff's substantive due process claim will be dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   July 29, 2020                                      /s/ Robert J. Jonker
                                                            Robert J. Jonker
                                                            Chief United States District Judge